IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HORACIO DE VEYRA PALANA, individually,
and on behalf of all other persons similarly
situated,

                Plaintiffs,

   v.

MISSION BAY INC. and PRINT IT HERE
AND COPY, INC.,

                Defendants.
                               /

No. C 13-05235 SI

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

     Defendants' motion for summary judgment came on for hearing on October 17, 2014.  For the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

     Plaintiff Horacio de Veyra Palana is a former employee of defendants, Mission Bay Inc. and Print it Here and Copy, Inc.[1]  Docket No. 1.  In 2008, plaintiff was hired by defendants to work as a driver and direct care assistant to defendants' clients.  Palana Decl. ¶ 2; Docket No. 29-3, Coker Decl. ¶ 6.  As an employee of defendants, plaintiff usually worked from around 7:00 am until 7:00 pm about five days a week.  Docket No. 2902, Palana Interrogatory at 4.  In the morning, plaintiff picked up clients from their group or personal homes and drove them to the defendants' facility, where the clients participated in social and recreational activities; these activities included exercises, group meals, crafts and outings.  Palana Decl. ¶¶ 4, 7-9; Docket No. 29-3, Coker Decl. ¶¶ 9, 10; Docket No. 29-2, Palana Interrogatory at 3.  Plaintiff assisted clients with their activities and exercises, helped feed clients, and helped clean up clients.  Palana Interrogatory at 3.  After the clients completed their activities, plaintiff would drive them back to their homes.  Docket No. 29-2, Palana Interrogatory at 4.  Plaintiff would then

_____

[1] For the purposes of this litigation, the parties stipulate that defendants were joint employers under the Fair Labor Standards Act and the California Labor Code.  Docket No. 29-2, Ex. 2.

United States District Court
For the Northern District of California

1  pick up afternoon clients.  *Id.*  Plaintiff would assist the afternoon clients in the same activities as the

2  morning clients, including an afternoon snack.  *Id.*  When the afternoon clients finished their activities,

3  plaintiff would drive them back to their homes.  *Id.*  Plaintiff stated in his declaration that he did not go

4  inside clients' homes and he was instructed that he was not allowed to enter the homes.  Palana Decl.

5  ¶¶ 4-5.  The parties dispute whether plaintiff worked inside the clients' homes.  Opp. at 5.

6  According to plaintiff, defendants failed to compensate their employees at the overtime rate for

7  overtime hours and failed to provide employees meal and rest breaks, all in violation of the Fair Labor

8  Standards Act (FLSA) and California's Labor Code and California's Business & Professions Code

9  section 17200, *et seq. Id.* ¶¶ 10-12.  Plaintiff also alleges defendants violated California Labor Code

10  sections 203 and 226, by failing to pay employees the amount due to them and failing to provide

11  accurate wage stubs.  Complaint at 7-8.

12  Plaintiff filed this putative class action on November 12, 2013.  Docket No. 1.  Defendants

13  moved to dismiss the complaint, which motion the Court denied on March 14, 2014.  Docket Nos. 11,

14  18, 24.  Defendants now move for summary judgment.

15

16  **LEGAL STANDARD**

17  Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and

18  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

19  material fact and that the moving party is entitled to a judgment as a matter of law." *Rosenbaum v.*

20  *Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011); Fed. R. Civ. P. 56(a).  The moving party bears the

21  initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

22  477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the

23  non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to

24  the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

25  Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

26  'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To

27  carry this burden, the non-moving party must "do more than simply show that there is some

28  metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id*. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id*.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

## DISCUSSION

Defendants move for summary judgment, arguing that defendants had no obligation to pay plaintiff for either overtime or meal and rest breaks because plaintiff: (1) was an exempt employee under federal law under the "companionship services" exemption; and (2) was exempt under California law as a "personal attendant."[2]

## I.    Fair Labor Standards Act

### A.  Background

The FLSA, enacted by Congress in 1938, mandates that hourly workers must be compensated at a rate one and one-half times the regular rate for hours worked in excess of forty hours per workweek.  29 U.S.C. § 207(a)(1).  In 1974, Congress extended the FLSA to include persons employed in domestic service in households.  The House Report on the 1974 amendment explained that while the term "domestic service" was not defined in the Act, "the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about a private home of the person by whom he or she is employed."  H.R. Rep. 913, 93rd Cong., 2nd Sess., 1974 WL 11448.  "The

---

[2]  Both parties also filed requests for judicial notice.  *See* Docket Nos. 35; 37.  The Court finds that it is appropriate to take judicial notice of these documents and therefore GRANTS both parties' requests for judicial notice.

United States District Court
For the Northern District of California

domestic service must be performed in a private home which is a fixed place of abode of the individual or family." *Id.* However, the 1974 amendment exempted certain domestic service employees from the minimum wage and overtime protection of the FLSA; among others, it exempted "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15). The rationale for this exemption was that "[p]eople who will be employed in the excluded categories are not regular bread-winners or responsible for their families' support." H.R. Rep. 913, 93rd Cong., 2nd Sess., 1974 WL 11448.

The 1974 FLSA amendment explicitly leaves gaps "as to the scope and definition of its 'domestic service employment' and 'companionship services' terms" and empowers the Department of Labor "to fill these gaps through rules and regulations." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007). Accordingly, the Department of Labor promulgated regulations through the process of notice and comment rule making. *Id.*; *see also* 40 FR 7404-02. The terms "domestic service employment" and "companionship services" were defined through this process. 29 C.F.R. §§ 552.3, 552.6.

Section 552.3 defined "domestic service employment" as:

[S]ervices of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed.

Section 552.6 defined "companionship services" as:

[T]hose services which provide fellowship, care and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.

In addition, the Department of Labor promulgated an "interpretation" titled "Third party employment," § 552.109(a), which stated:

Employees who are engaged in providing companionship services, as defined in § 552.6, and who are employed by an employer or agency other than the family or household using their services, are exempt from the [FLSA's] minimum wage and overtime requirements by virtue of [29 U.S.C. §213(a)(15)].[3]

---

[3] The Supreme Court discussed these provisions in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007). The Supreme Court recognized that § 552.3 and § 552.109(a) are "apparently conflicting" regulations. In an action specifically challenging the validity of § 552.109(a)'s third-party provision, the Court found that it was valid and enforceable. The Court did not address the question

4

**United States District Court**
For the Northern District of California

Since 1974, the Department of Labor has recognized that the home care industry "has undergone dramatic expansion and transformation" and that many direct care workers "have been excluded from the minimum wage and overtime protections of the FLSA under the companionship services exemption . . ." Application of the Fair Labor Standards Act to Domestic Service, Final Rule, 76 FR 60454-01, October 1, 2013. The Department describes the changes to the home care industry: "Today, direct care workers are for the most part not the elder sitters that Congress envisioned when it enacted the companionship services exemption in 1974, but are instead professional caregivers." *Id.* "The Department believes that the lack of FLSA protections harms direct care workers, who depend on wages for their livelihood and that of their families, as well as the individuals receiving services and their families who depend on a professional, trained workforce to provide high quality services." *Id.* To address this issue, the Department promulgated amendments to the regulatory text, effective January 1, 2015. The amended regulations exclude from the FLSA exemption third party employers of employees engaged in companionship services.[4] 29 C.F.R. § 552.109, Effective January 1, 2015.

Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them." *Cleveland v. City of Los Angeles*, 420 F.3d 981, (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). An "employer who claims an exception from the FLSA has the burden of showing that the exemption applies." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (quoting *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)). The employer has the burden to prove that plaintiff fits "plainly and unmistakably within the terms and spirit of the exemption." *Id.* (quoting *Arnold*, 361 U.S. at 392) (internal quotation mark omitted).

---

presented here, concerning the requirement that domestic services be performed "in or about a private home." It is worth noting, however, that there is no "apparent conflict" between § 552.3 and § 552.6, as there was with the third-party employer provision.

[4] "Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act. . ." 29 C.F.R. § 552.109, Effective January 1, 2015.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**     **Application of Companionship Services Exemption to Plaintiff**

Defendants argue that plaintiff falls within an exemption to the FLSA, as a domestic service employee providing companionship services. Motion at 8.  Under § 213(a)(15), the FLSA minimum wage and overtime requirements do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined by regulations of the Secretary)."  29 U.S.C. § 213(a)(15).  "[T]he legislative history of the FLSA and the statutory language of the exemption demonstrate that Congress clearly recognized that companions would be an exempt *sub-category* of domestic service workers."  *McCune v. Oregon Senior Servs. Div.*, 894 F.2d 1107, 1109 (9th Cir. 1990).

The relevant Department of Labor regulations define "domestic service employment" as "services of a household nature performed by an employee *in or about a private home* (permanent or temporary) of the person by whom he or she is employed."  29 C.F.R. § 552.3.  Those regulations define "companionship services" as:

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the infirm person such as meal preparation, bed making, washing of clothes, and other similar services.

29 C.F.R. § 552.6.  The present dispute centers on whether the overtime exemption may properly be claimed where a domestic service employee performs companionship services at a location other than "in or about a private home."

Plaintiff asserts that exempt companionship services must be performed in or about a private home, and because his services were performed outside the home he cannot qualify as an exempt employee. Opp. at 8. Defendants contend that plaintiff is an exempt employee because companionship services may be performed away from the consumer's home, and that an interpretation of the statute to the contrary would be absurd and inconsistent with the policies involved.  Motion at 10-11. The parties agree that there is no case law[5] which directly addresses the meaning of "in or about the private home"

---

[5] Defendants cite a case from the Northern District of Oklahoma, *Zachary v. Rescare Oklahoma, Inc.*, 471 F.Supp. 2d 1183 (N.D. Okla. 2006), to support their contention that companionship services need not be performed within the home.  The employees in *Zachary* "undisputably spent at least some time outside the home" and argued that because they "provided certain services outside the four walls

6

**United States District Court**
For the Northern District of California

in terms of where "companionship services" are performed in order to qualify as exempted "domestic service employment."[6]

"When a question arises as to the meaning of the FLSA or the Secretary's regulations, we apply traditional rules of construction and, where required, administrative deference." *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392 (9th Cir. 2011) (citations omitted). "To interpret a regulation, we look first to its plain language." *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004). The Court presumes "the drafters said what they meant and meant what they said." *Id*. (citing *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). "If the regulation is unambiguous, its plain meaning controls unless such reading would lead to absurd results." *Bucher*, 375 F.3d at 932 (citing *Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir. 1995)). "The plain language of a regulation . . . will not control if clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1085 (9th Cir. 2007) (quoting *Safe Air for Everyone v. E.P.A.*, 488 F.3d 1088, 1097 (9th Cir. 2007)). "We invoke this exception to the plain meaning canon, however, only when some indication of the regulatory intent that overcomes plain language . . . [is] referenced in the published notices that accompanied the rulemaking process." *Id*. at 1085 (quoting *Safe Air for Everyone*, 488 F.3d at 1098) (internal quotation mark omitted).

Here, the regulation is unambiguous. Section 552.3 states that "domestic services" are "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." The term "in" means "to or toward the inside especially of a house or other building." *Merriam- Webster's Collegiate Dictionary* 627 (11th ed. 2012). The term "about" in this context is defined as "around the outside," "in the vicinity," or "near." *Id*. at 4. A

---

of the clients' homes" they could not qualify as exempt employees. *Zachary*, 471 F.Supp. 2d at 1194. Here, by contrast, plaintiff maintains he conducted no business inside the clients' homes and worked exclusively outside of the client's private homes.

[6] The parties also agree that, as of January 1, 2015, the applicable regulations will change, so as to preclude third-party employers – like defendants in this case – from claiming the overtime exemption for employees like plaintiff.

common sense reading of the regulation's plain language "in or about a private home" is that the domestic services must be performed inside or around the outside of a private home.

Defendants assert that interpreting the companionship exemption to apply only to services performed in the home is wholly inconsistent with the exemption. Motion at 11. The Court disagrees. Here, following the plain language of the regulation does not produce "absurd results" or "contravene the pertinent administrative history." *See Safe Air for Everyone*, 488 F.3d at 1099. In the present case, there is no indication regulatory intent should overcome plain meaning. Further, defendants have not pointed the Court to any part of the regulatory history that indicates "in or about a private home" means something other than "inside" or "around the outside" of a private home.[7]

Additionally, there remain disputed facts regarding where plaintiff performed the companionship services. Plaintiff asserts he did not work inside the client's homes and stated in his declaration that he did not enter the clients' homes and was instructed not to do so. Palana Decl. ¶¶ 4-5. Defendants maintain that plaintiff engaged in at least some work inside the homes.[8] To qualify as an exempt employee under the companionship services exemption, plaintiff must have provided services "in or about," meaning "inside" or "around the outside" of a private home. There remain genuine issues of material fact as to whether plaintiff's services were performed inside the private homes of clients which preclude the Court from determining whether plaintiff qualifies as an exempt employee. Accordingly, the Court DENIES defendants' motion as to this issue.

## II.    California Claims

### A.    Overtime Claims

The California Labor Code, like the FLSA, provides that "[a]ny work in excess of eight hours in one workday and . . . 40 hours in any one workweek . . . shall be compensated at the rate of no less

---

[7]   40 Fed. Reg. 7404-07 (Feb. 20, 1975).

[8]   At the motion hearing, defendants referred to a letter as evidence that plaintiff worked inside clients' homes. The Court assumes defendants were referring to a letter written by plaintiffs' attorney and submitted to the California Labor and Workforce Development Agency in November, 2013. Docket No. 29-1. This letter includes a description of plaintiff's work: "He would pick [clients] up from their home, helping them to get into a van and sometimes assisting them to dress and leave the home." *Id.*

United States District Court

For the Northern District of California

than one and one-half times the regular rate of pay...." Cal. Lab. Code § 510(a).  An employee receiving

less than the legal overtime compensation application to the employee is entitled to recover the unpaid

balance in a civil action.  *Id.* § 1194.  Defendants argue that plaintiff is exempt from overtime pay as

a "personal attendant" under Industrial Welfare Commissioner (IWC) Wage Order Number 15.  Motion

at 15.

"Under California law, exemptions from statutory mandatory overtime provisions are narrowly

construed."  *United Parcel Service Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1014-15 (Cal. Ct.

App. 2010).  "Moreover, exemptions are affirmative defenses, and therefore, *the employer bears the*

*burden of proving an employee is properly designated as exempt*."  *Id.* (emphasis in original).  "We

construe wage orders, as quasi-legislative regulations, in accordance with the standard rules of statutory

interpretation."  *Bearden v. U.S. Borax, Inc.*, 138 Cal. App. 4th 429, 435 (Cal. Ct. App. 2006).  "IWC's

wage orders are entitled to extraordinary deference, both in upholding their validity and in enforcing

their specific terms."  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th. 1004, 1027 (Cal. 2012)

(quoting *Martinez v. Combs*, 49 Cal. 4th 35, 61 (Cal. 2010)) (internal quotation mark omitted).  "[T]he

relevant wage order provisions must be interpreted in the manner that best effectuates that protective

intent."  *Id.*  Our analysis begins with the text of the statute; the statute's words must be assigned their

usual and ordinary meanings and evaluated in context.  *Martinez*, 49 Cal. 4th at 51.  If the plain meaning

is unambiguous, the inquiry ends there.  *Id.*  However, "if the language allows more than one reasonable

construction, we may look to such aids as the legislative history of the measure and maxims of statutory

construction."  *Id.*  Wage Order Number 15 provides the following definition for personal attendant:

> Personal attendant includes baby sitters and means any person employed by a private
> householder or by any third party employer recognized in the health care industry to
> work in a private household, to supervise, feed, or dress a child or person who by
> reason of advanced age, physical disability, or mental deficiency needs supervision.
> The status of 'personal attendant' shall apply when no significant amount of work
> other than the foregoing is required.

Cal. Code Regs., tit 8, § 11150, subd. 2(J).

Defendants maintain that the work of a personal attendant need not take place inside a private

household.  Motion at 8.  However, the exemption's language is unambiguous.  The Wage Order defines

a "personal attendant" as an employee who works "in a private household."  *Id.*  The "usual and

ordinary" meaning of the word "in" is "to or toward the inside especially of a house or other building."

9

*Merriam-Webster's Collegiate Dictionary* 627 (11th ed. 2012). There is no ambiguity in this language, and so "the IWC is presumed to have meant what it said, and the plain meaning of the language governs." *Cash v. Winn*, 205 Cal. App. 4th 1285, 1297 (Cal. Ct. App. 2012) (citation omitted).

Thus, to qualify under the personal attendant exemption, plaintiff must have worked "in a private household," meaning "inside" the household. Again, there remain disputed material facts as to where plaintiff performed his services. Plaintiff claims that he never went inside the clients' homes and was instructed that he could not enter the clients' homes. Palana Decl. ¶¶ 4-5. And defendants assert that he performed some work inside the clients' homes. "Determining whether or not all of the elements of the exemption have been established is a fact-intensive inquiry. The appropriateness of any employee's classification as exempt must be based on a review of the actual job duties performed by that employee." *Guerrero v. Superior Court*, 213 Cal. App. 4th 912, 956 (Cal. Ct. App. 2013) (quoting *United Parcel Service Wage & Hour Cases*, 190 Cal. App. 4th at 1014-15). Accordingly, the Court DENIES defendants' motion for summary judgment as to this issue.

## B.    Meal and Rest Breaks

Defendants assert that plaintiff was exempt from meal and rest breaks under Wage Order 15. Motion at 19. The Court has found that defendants have not met their burden to show that plaintiff is exempt as a personal attendant under Wage Order 15. Accordingly, the Court cannot award defendants' summary judgment on this issue and must DENY this motion as to this claim.

## C.    Unfair Competition and Declaratory Relief

Defendants argue that they must also be granted summary judgment as to plaintiff's unfair competition claim and request for declaratory relief because they are derivative of his other claims. As the Court cannot grant defendants' summary judgment as to plaintiffs' other claims, it must also DENY summary judgment as to these issues.

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion for summary judgment as to plaintiff's claims for failure to compensate their employees for overtime and meal and rest breaks in violation of the FLSA, California Labor Code, and California Business & Professions Code.

**IT IS SO ORDERED.**

Dated: November 11, 2014

_____
SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE