UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HORACIO DE VEYRA PALANA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MISSION BAY INC., et al.,<br><br>Defendants. | Case No. 13-cv-05235-SI<br><br>**ORDER GRANTING PLAINTIFFS'  MOTION FOR  CLASS CERTIFICATION** |

Plaintiffs' motion for class certification came on for hearing on June 2, 2015. Docket No. 79. For the following reasons, the Court hereby GRANTS plaintiffs' motion.

## BACKGROUND

Plaintiffs are former employees of defendants. Second Amended Complaint ¶ 1. Defendants provide care and companionship for mentally disabled adults. *Id*. ¶ 9. Defendants employ direct care staff to supervise and interact with clients in their care. *Id*. Some of these employees pick up clients from their homes, drive them to defendants' facilities where they provide food and on-site activities, and drive clients to various off-site activities arranged by defendants. *Id*. Plaintiffs were paid on an hourly basis. *Id*. ¶ 10.

According to plaintiffs, defendants failed to compensate their employees at the overtime rate for overtime hours and failed to provide employees meal and rest breaks, all in violation of the Fair Labor Standards Act (FLSA) and California's Labor Code and California's Business & Professions Code section 17200, *et seq*. *Id*. at 6-8; 10-12. Plaintiffs also allege defendants violated California Labor Code sections 203 and 226, by failing to pay employees the amount due to them and failing to provide accurate wage stubs. *Id*. at 7-8.

Plaintiff Palana filed this putative class action on November 12, 2013. Docket No. 1. Defendants moved to dismiss the complaint, which the Court denied on March 14, 2014. Docket Nos. 11, 18, 24. Defendants then moved for summary judgment as to Palana's claims for failure to compensate employees for overtime and meal and rest breaks, arguing that Palana was an exempt employee under federal law pursuant to the "companionship services" exemption; and (2) was exempt under California law as a "personal attendant." Docket No. 29. The Court denied defendants' motion on November 11, 2014. Docket No. 43. In January 2015 the parties stipulated to the addition of plaintiffs Soliven, Cabiles, and Yalung to the lawsuit and to the amendment of the complaint to include these plaintiffs. Docket Nos. 53, 54. Plaintiffs now seek class certification.

## LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)). The plaintiff "must actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2412 (2014) (citing *Comcast Corp v. Behrend*, -- U.S. ----, 133 S.Ct. 1426, 1431-32 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011)).

The Court's "class certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S.Ct. at 2551 (internal quotation marks omitted)). These analytical principles govern both Rule 23(a) and 23(b). *Behrend*, 133 S.Ct. at 1342. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S.Ct. at 1194-95. "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether

2

1  Rule 23 prerequisites for class certification are satisfied." *Id*.

2  Under Rule 23(a), the class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. See Fed. R. Civ. P. 23(b).

**DISCUSSION**

**I.    Defendants' Pay Policies**

Plaintiffs argue that defendants had a uniform policy in place regarding the payment of overtime and provision of meal and rest breaks for its employees such that this case is appropriate for class treatment. Motion at 10.

As to overtime, plaintiffs contend defendants applied a pay policy to care worker employees that failed to provide overtime wages. Plaintiffs claim that employees worked shifts of 6, 8, and up to 11 hours without ever being paid overtime. Some employees were paid for less time than they actually worked. Palana Decl. ¶ 15; Yalung Decl. ¶ 15 ("We were paid through 6:30 pm to take the clients home, but we usually didn't finish until 7 pm or 7:15 pm."). Employees were not paid overtime. Palana Decl. ¶ 19; Yalung Decl. ¶ 24.

For meal breaks, plaintiffs assert defendants applied a policy to employees that failed to provide meal breaks; employees were not provided a period in which they were relieved of all duties to take a meal break and were instead required to work through their meal breaks. Care givers and clients had to eat between 11:30 am and 12:30 pm but staff could not eat while clients were eating. Palana Decl. ¶ 11; Soliven Decl. ¶ 10; Conchito Decl. ¶¶ 7-9. Employees could eat after their clients finished eating, but would have to eat fast to ensure they could supervise the

3

clients. Palana Decl. ¶ 12; Soliven Decl. ¶ 10; Conchito Decl. ¶7. Further, plaintiffs assert that some employees —like Palana—were required to sign on-duty meal break agreements. Palana Decl. ¶ 10, Ex. 1.

As to rest beaks, plaintiffs contend that defendants had no rest break policy and the defendants' handbook is silent as to the provision of rest breaks. Palana Decl. ¶ 16; Soliven Decl. ¶ 14; Conchito Decl. ¶ 11; Yalung Decl. ¶ 17; Tran Decl. ¶ 10, Ex. 1. Employees could "endorse" their clients to other employees for limited periods but each employee was not to watch more than three clients. Palana Decl. ¶ 16. Most employees were already assigned three clients so when they endorsed additional clients they would go over the three client limit. *Id*. Defendants did not have staff available to relieve employees if they needed to take a break or step away. Yalung Decl. ¶ 19.

Plaintiffs contend that defendants' policies as to overtime, meal, and rest breaks violate California wage and hour law.

## II.    Proposed Classes

Plaintiffs seek to certify 163 care worker employees who provided companionship, therapy, and assistance to developmentally disabled individuals who were clients of defendants. Three classes are sought:

> All non-exempt persons who were employed by defendants at any time from November 12, 2009 to November 12, 2013[1] who fall under the following sub-classes:
>
> 1. <u>Overtime Class</u>: Hourly employees who were suffered or permitted to work over 40 hours in a week or 8 hours in a day without the payment of overtime wages;
>
> 2. <u>Meal Period Class</u>: Hourly employees who worked a shift of 6 hours or more without an unpaid 30 minute meal period; and

---

[1] In their motion, plaintiffs state that they seek to certify a class of all non-exempt persons who worked for defendants from November 12, 2009 until the present. Motion at 6. At the hearing, plaintiffs stated that they seek to certify a class of employees who worked from November 2009 until the filing of the complaint in November 2013. Accordingly, the Court applies the date the complaint was filed.

3. <u>Rest Break Class</u>: Hourly employees who worked shifts of more than 6 hours and were not provided unpaid 10-minute rest breaks every 4 hours of fraction thereof.

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Defendants argue that the meal break and rest break classes are not ascertainable. Opp. at 10. However, the Court finds that all three of the plaintiffs' proposed classes are ascertainable. The classes are defined as persons employed by defendants who worked over 40 hours in a week or 8 hours in a day without the payment of overtime wages; persons employed by defendants who worked 6 hours or more without meal breaks; and persons employed by defendants who worked 6 hours or more without rest breaks. Defendants have provided to plaintiffs a list of approximately 163 care workers. Docket No. 67, Margain Decl. ¶ 16. Accordingly, the class definitions are ascertainable, and the proposed class members identifiable.

### III. Rule 23(a) Requirements

#### A. Numerosity

In order to certify, the class must be so numerous that joinder of all members individually is "impracticable." *See* Fed. R. Civ. P. 23(a)(1). Here, defendants have disclosed a class list of 163 putative class members; the data for 11 of those class members was not provided. Plaintiffs seek to certify 147 employees in the overtime class and estimate most if not all of the 152 employees for whom they received data qualify for the meal and rest break classes. Motion at 11. Defendants do not dispute that plaintiffs have satisfied the numerosity requirement. The Court therefore finds that the numerosity requirement is satisfied for the three proposed classes.

#### B. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.

5

R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157) (internal quotation mark omitted). Plaintiffs' claims "must depend on a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution– which means that determination of its truth or falsity will resolve an issue that is central to the validity of each other of the claims in one stroke." *Id.*

Plaintiffs have identified the common question of law and fact concerning overtime wages: whether defendants' uniform policy of denying overtime wages violates the FLSA and California law. Plaintiffs identified the common question of law and fact concerning meal breaks: whether defendants' uniform policy, as applied to plaintiffs, violates California law because it failed to pay plaintiffs for an on-duty meal. As to rest breaks, plaintiffs offer the common question of law and fact: whether defendants' policies, uniformly applied to plaintiffs, violate California law by failing to provide rest breaks.

Defendants do not assert a challenge to the commonality prong of Rule 23(a). The Court finds that there are common questions of law and fact that can be answered on a class basis, thus the commonality requirement of Rule 23(a) is met.

### C. Typicality

Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the class. To satisfy this requirement, the named plaintiffs must be members of the class and must "possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quotation marks and citation omitted). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). Rule 23(a)(3) is "permissive" and only requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

6

Here, plaintiffs' theory is that defendants instituted policies in which they denied class members overtime hours, meal breaks, and rest breaks and that plaintiffs were subject to the policies and suffered the same injury as a result of the policies. Plaintiffs' claims are identical between the representative plaintiffs and the putative class members. Defendant has not challenged the typicality of the named plaintiffs. The Court finds that plaintiffs have met the typicality requirement.

**D. Adequacy**

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *See Staton,* 327 F.3d at 954.

Defendants assert that plaintiffs Palana, Yalung, and Soliven do not adequately represent the class and request they be disqualified as representatives. First, defendants assert that on November 21, 2014, plaintiff Palana (without the knowledge of his attorneys) demanded $20,000 from defendants to settle his case. Opp. at 13. Defendants argue that this shows Palana acting vigorously to defend his own interests and not those of the class and further shows he has a conflict of interest with his attorneys and with the class. *Id*.

Defendants next argue that plaintiff Joan Soliven called another former employee, Jonattan Chua, at least six times a week, despite Chua telling her that he did not want to be part of the lawsuit. Opp. at 14. Defendants assert that Soliven harassed this former employee and promised him that he would get $30,000 if he was part of the lawsuit. According to defendants, Soliven does not have the wisdom and integrity to represent the class. As to plaintiff Yalung, defendants argue that he has a record of dishonesty and improper behavior that shows he lacks the wisdom and integrity to represent the class.

Integrity and credibility are relevant considerations in determining adequacy. *See Harris v. Vector Marketing Corp.*, 753 F.Supp. 2d 996, 1015 (N.D. Cal. 2010). However, there is

7

"inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id*. The Court has examined Palana's second declaration describing his interactions with Brandon and Maria Coker regarding settlement, Soliven's second declaration describing her interactions with Chua, and the documents submitted by defendants regarding Yalung. Docket Nos. 70, 73, 74. Having carefully reviewed these documents, the Court is not persuaded that Palana, Soliven and Yalung are inadequate class representatives, as defendants have not shown that their credibility on issues directly relevant to the litigation should be questioned.

Defendants have not challenged the adequacy of plaintiffs' counsel in this case and after reviewing the declarations of plaintiffs' counsel the Court finds plaintiffs have satisfied the adequacy requirement.

### IV. Rule 23(b)

Along with the requirements of Rule 23(a), a plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b). Here, plaintiffs seek certification under Rule 23(b)(3), which provides that a case may be certified as a class action if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### A. Predominance

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, -- U.S. ----, 133 S.Ct. at 1432. The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022) (internal quotation mark omitted). The Rule requires "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 133 S.Ct. at 1196 (quoting Fed. R. Civ. P.

23(b)(3)) (emphasis in original).

### (1) Overtime Class

Defendants argue that plaintiffs' overtime claims require numerous individual inquiries and therefore cannot meet the predominance requirement. Opp. at 12-13. Defendants contend that their care giver employees are exempt from overtime pay under the FLSA as domestic service employees providing companionship services and under California law because they are "personal attendants." Opp. at 11-12.

The FLSA, enacted by Congress in 1938, mandates that hourly workers must be compensated at a rate one and one-half times the regular rate for hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). In 1974, Congress extended the FLSA to include persons employed in domestic service in household, but exempted certain domestic service employees from the minimum wage and overtime protection of the FLSA; among others, it exempted "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15). The relevant Department of Labor regulations define "domestic service employment" as "services of a household nature performed by an employee *in or about a private home* (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3.

Similarly, the California Labor Code provides that "[a]ny work in excess of eight hours in one workday and . . . 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay...." Cal. Lab. Code § 510(a). Wage Order Number 15 "provides that personal attendants are exempt from statutory overtime requirements." *Cash v. Winn*, 205 Cal. App. 4th 1285, 1298 (2012) (quoting Cal. Code Regs., tit 8, § 11150, subd. 1(B)). "Personal attendant" is defined as "any person employed by a private householder or by any third party employer recognized in the health care industry to work in a private household, to supervise, feed, or dress a child or person who by reason of advanced age, physical disability, or mental deficiency needs supervision." *Id*. subd. 2(J).

The Court previously ruled that these exemptions apply under the FLSA where domestic service employees provide companionship services inside or around the outside of a private home, and under California law where a personal attendant works inside a private household. Docket No. 43 at 6-10. Defendants' contrary argument, that domestic service companionship employees are exempt employees even if the companionship services are performed away from the consumer's home, was rejected by this Court. *Id.*

Plaintiffs assert that the common question of law and fact—whether employees were denied overtime pay in violation of the FLSA and California Labor Code—predominates over questions affecting only individual class members. Defendants concede that they applied a uniform policy to care worker employees, treating them all as exempt under the FLSA and the California Labor Code. Defendants' written policies state that "[o]vertime will not be paid unless approved by management first." Docket No. 68-1. However, defendants argue that it cannot be determined whether any individual employee was properly classified as exempt without a mini-trial on the exemption defense. Opp. at 1, 3, 12.

As was discussed at some length in connection with defendants' motion for summary judgment, there are disputes of fact as to whether plaintiffs ever went inside clients' homes to perform services attendant to driving the clients to defendants' facilities. Plaintiffs have presented evidence that defendants trained plaintiffs not to enter the homes of the clients they picked up. Cabiles Decl. ¶ 4 ("We were instructed not to enter the homes of those [clients] we picked up. We could help the client get into the van, but that was always done outside of the house."); Yalung Decl. ¶ 7 ("We picked up the clients from either care homes or their personal homes. In both situations, we were told that we could not enter the house. We were not allowed to go inside those homes to protect Mission Bay from liability and to respect the confidentiality requirements of laws like HIPAA."). Additionally, plaintiffs offer evidence that defendants maintained a standard policy governing where employees performed their jobs, specifically prohibiting them from

10

entering client homes. Yalung Decl. ¶ 8 ("When I was a caregiver, MARIA COKER was the person who informed staff not to enter the homes of the clients. When I was promoted to Assistant Program Director, I was the one informing staff not to enter the homes of clients. I was told by MARIA COKER to make sure this was understood."); Palana Decl. ¶¶ 6-7 ("Specifically, I was told not to enter any homes because something bad could happen . . . When I was a caregiver, it was MARIA COKER, DENNIS MICCLAT and WILMA ABAYA who informed staff not to enter the homes of the clients."). However, defendants assert that employees were never told not to enter client's homes, and in fact could perform services inside client's homes if necessary. Opp. at 12 (citing Coker Depo. at 66, 102).

Significantly, the Vice-President of Mission Bay, Inc. and President of Print It Here and Copy, Inc., Brandon Coker, explained in his deposition that care worker employees who drove clients to and from their homes were considered personal attendants. Coker Depo. at 102, Docket No. 69-4. He stated: "They are personal attendants, and driving is incidental to their work. It's not a primary thing. So it's incidental to the job." *Id*.

Plaintiffs' contentions are consistent with Coker's testimony: plaintiffs maintain that they are not exempt because even if some work was performed inside of clients' homes, it was incidental to the plaintiffs' job duties. Reply at 3. That is, plaintiffs contend that even if some employees did perform some work inside of clients' homes, in contravention of the policies set forth by defendants, it was incidental to their jobs as caregivers and cannot satisfy the requirements of the exemption under the FLSA or California law. *Id*. at 3-4. Exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them." *Cleveland v. City of Los Angeles*, 420 F.3d 981, (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). An "employer who claims an exception from the FLSA has the burden of showing that the exemption applies." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (quoting *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)). The employer has

the burden to prove that plaintiff fits "plainly and unmistakably within the terms and spirit of the exemption." *Id*. (quoting *Arnold*, 361 U.S. at 392) (internal quotation mark omitted).

The common question of whether a care worker employee, who performs—incidental to his or her work—some work inside a client's home is exempt from overtime pay under the FLSA or the California Labor Code predominates over questions affecting individual plaintiffs and is a question for a jury's determination. And in the event that a jury does not agree with plaintiffs' theory, the entire class will lose this case. Thus, the Court finds that the question of whether plaintiffs are exempt, which is common to all class members and may be resolved on a class-wide basis, predominates.

### (2) Meal Break Class

As to their meal break claims, plaintiffs argue that defendants assert that plaintiff's meal break claims require numerous individualized inquiries to determine why some care workers did or did not take lunch breaks. Additionally, defendants argue that many care workers signed meal waivers, which complicates the individual analyses.

California law provides that an employer may not "require any employee to work during any meal . . . period mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7(a). Wage Order Number 15 states that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty (30) minutes." Cal. Code Regs. tit. 8, § 11150 subd. 11(A). When an employee works only six hours in a day, "the meal period may be waived by mutual consent of the employer and employee." *Id*.

Here, plaintiffs' theory is that defendants instituted uniform on-duty meal break policies and these policies—whether enacted by signed agreement or not—are illegal.[2] In their reply plaintiffs state that defendants failed to provide a compliant meal break to employees who did not

---

[2] Although plaintiffs mention the statutory exception allowing for on-duty meal breaks where the "nature of work" and other requirements are met, this is an affirmative defense that defendants have not raised.

12

sign an on-duty meal break agreement. Reply at 5. Plaintiffs also argue that the on-duty meal agreements signed by employees were illegal. *See id.* ("For those employees who did sign an on-duty meal agreement, whether the agreement is legal depends in part on whether "the nature of the work must prevent the employee from being relieved of all duty during the meal period."). The plaintiffs' assertion that defendants enacted a uniform meal break policy that required employees to remain "on-duty" during meal breaks, thereby violating California law, constitutes a question susceptible to common proof and capable of class-wide resolution. Accordingly, plaintiffs have satisfied the predominance requirement.

### (3) Rest Break Class

Plaintiffs seek certification of the rest break class, arguing that defendants had no written rest break policy and that defendants maintained the uniform practice of "endorsing" clients from one care worker for rest breaks. Defendants counter that they have a break policy and that care workers regularly took their 10-minute breaks by endorsing clients to other employees and then taking their rest breaks. According to defendants, plaintiffs' break claims require numerous individualized inquiries into why some workers did or did not take breaks and therefore common questions do not predominate.

The California Supreme Court in *Brinker Restaurant Corp. v. Superior Court*, 52 Cal. 4th 1004, 1033 (2012) explained that an employer is required to authorize and permit the amount of break time called for under the relevant wage order. If the employer does not do so, and instead "adopts a uniform policy" that does not authorize or permit the proper amount of break time, "it has violated the wage order and is liable." *Id*. As the *Brinker* court noted, where the theory of liability is that the employer "had a uniform policy, and that policy, measured against wage order requirements, allegedly violates the law" it is "by its nature a common question eminently suited for class treatment." *Id*. Here, plaintiffs' theory of liability is that defendants violated wage and hour requirements by failing to adopt a policy that authorized and permitted rest breaks. This is a legal issue capable of class-wide resolution; thus the Court finds that plaintiffs have met the predominance requirement.

**B. Superiority**

"Rule 23(b) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy." *Hanlon*, 150 F.3d at 1023 (quoting Fed. R. Civ. P. 23(b)(3)). The Court must determine "whether the objectives of the particular class action procedure will be achieved in the particular case." *Id*. (citation omitted). The four factors for the Court's examination are: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Zinser*, 253 F.3d at 1190-92.

In this case, a class action is the superior method of adjudication. Here, the alternative methods of resolution are individual claims by individual plaintiffs. Class treatment would increase the class members' access to redress by unifying what otherwise may be multiple small claims. Further, there is no other pending litigation involving these claims. *Zinser*, 253 F.3d at 1191. Defendants, documents, most witnesses and class members reside in this judicial district, making it desirable to concentrate the litigation here. *Id*. at 1192. Each class member will not have to litigate "numerous and substantial separate issues to establish his or her right to recover individually." *Id*. Here, the complexities of class action treatment do not outweigh the benefits of considering common issues in one trial; thus class action treatment is the superior method of adjudication. *Id*.

Defendants do not challenge plaintiffs' arguments regarding superiority. The Court finds that plaintiffs have satisfied the superiority requirement.

///

///

**CONCLUSION**

For the reasons stated above the Court hereby GRANTS plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: July 7, 2015

_____
SUSAN ILLSTON
United States District Judge